**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COMCAST CABLE COMMUNICATIONS, LLC, TV WORKS, LLC, and COMCAST MO GROUP, INC.,** Plaintiffs, | **CIVIL ACTION** |
| **v.** | **NO.  12-859** |
| **SPRINT COMMUNICATIONS COMPANY, LP, SPRINT SPECTRUM, LP, and NEXTEL OPERATIONS, INC.,** Defendants. | |
| **SPRINT COMMUNICATIONS COMPANY, LP, and SPRINT SPECTRUM, LP,** Counterclaim-Plaintiffs, | |
| **v.** | |
| **COMCAST CABLE COMMUNICATIONS, LLC,  COMCAST IP PHONE, LLC, COMCAST BUSINESS COMMUNICATIONS, LLC, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,** Counterclaim-Defendants. | |

**DuBois, J.**                                                    **November 8, 2016**

**M E M O R A N D U M**

## I.    INTRODUCTION

This case involves claims of patent infringement between Comcast Cable

Communications, LLC, and related entities (collectively "Comcast"), and Sprint

Communications Company, L.P., and related entities (collectively "Sprint"). Comcast asserted

claims for infringement of its U.S. Patent Number 6,885,870 against Sprint. Sprint asserted

counterclaims for infringement of its U.S. Patents Numbers 6,754,907 and 6,757,907 against

Comcast. Presently before the Court is Sprint's Motion *in Limine* of Dr. Robert Akl and Motion for Summary Judgment of Non-Infringement Regarding Sprint's Non-Syniverse Messaging Servers, and Comcast's Memorandum in Opposition to Sprint's Motions.

## II.    BACKGROUND

On February 17, 2012, Comcast filed a Complaint against Sprint alleging infringement of four of its patents, including U.S. Patent Number 6,885,870 ("the '870 patent").[1] On May 14, 2012, Sprint filed an Answer and Counterclaim,[2] alleging infringement of seven of its own patents, including U.S. Patents Numbers 6,754,907 ("the '4,907 patent") and 6,757,907 ("the '7,907 patent") (collectively "the '907 patents").[3] The Court has jurisdiction over this case under 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

On June 6, 2012, Comcast filed a First Amended Complaint asserting claims for infringement of the '870 patent and three other patents.[4] Sprint filed an Amended Answer and Counterclaims on June 25, 2012, asserting infringement of the same seven patents. Both parties withdrew their claims with respect to several patents prior to claim construction.[5]

On August 15, 2014, the Court issued a Memorandum and Order construing disputed claim terms in dispute. *See Comcast Cable Commc'ns, LLC, et al. v. Sprint Commc'ns Co., LP, et al.* (*Comcast v. Sprint I*), 38 F. Supp. 3d 589 (E.D. Pa. 2014). Subsequently, Comcast

---

[1] In addition to the '870 patent, Comcast alleged infringement of its U.S. Patents Numbers 7,684,391, 5,987,323, and 6,112,305.

[2] Sprint's counterclaims are permissive counterclaims unrelated to Comcast's claims asserted under Federal Rule of Civil Procedure 13(b).

[3] In addition to the '907 patents, Sprint alleged infringement of its U.S. Patents Numbers 7,602,886, 7,043,241, 7,054,654, 6,727,916, and 6,965,666.

[4] In its First Amended Complaint, Comcast withdrew its claims for infringement of U.S. Patent Number 7,684,391 and asserted new claims for infringement of U.S. Patent Number 5,991,271.

[5] Comcast withdrew its claims with respect to U.S. Patents Numbers 6,112,305 and 5,991,271. Sprint withdrew its claims with respect to U.S. Patents Numbers 7,602,886, 7,043,241, 7,054,654, and 6,965,666.

withdrew all claims except those alleging infringement of the '870 patent and Sprint withdrew all claims except those alleging infringement of the '907 patents.

The parties then proceeded with fact and expert discovery. On August 5, 2015, following the completion of almost all discovery, the parties filed a Joint Motion to Stay in light of ongoing global settlement negotiations between Comcast and Sprint, involving this case and litigation in other courts over claims for infringement of unrelated patents. The Court granted the Motion by Order dated August 13, 2015, and stayed the case for six months. Following the parties' report of the failure of the global settlement negotiations, the Court, by Order dated February 12, 2016, returned the case to the active docket and set a briefing schedule for, *inter alia*, supplemental claim construction on additional disputed terms in the '870 patent.

The Court conducted supplemental *Markman* hearings and oral argument on pending Motions for Summary Judgment and *Daubert* Motions on June 22, 23, 24, and 29, 2016. In its Memorandum and Order of August 24, 2016, the Court, among other things, granted summary judgment in favor of Comcast as to Sprint's '907 patent claims, leaving active only Comcast's '870 patent claims. *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP* (*Comcast v. Sprint II*), No. CV 12-859, 2016 WL 4478756 (E.D. Pa. Aug. 25, 2016). That Memorandum includes a more detailed history of the case. On October 5, 2016, the Court granted Sprint leave to file the present Motion *in Limine* of Dr. Akl and Motion for Summary Judgment in Case Management Order #6.

## III.    SPRINT'S MOTION IN LIMINE RELATING TO DR. ROBERT AKL

Sprint moves to exclude from the trial portions of Dr. Robert Akl's expert testimony. As Comcast's liability expert, Dr. Akl has provided expert opinions regarding Sprint's alleged infringement of the '870 patent in the form of three expert reports and deposition testimony. The

alleged infringement is based on the status of Sprint's Short Message Service Centers ("SMSCs") and Multimedia Message Service Centers ("MMSCs") (collectively, "Sprint's messaging servers"). The '870 patent "proposes a method by which *the messaging server external to a cellular network* can inquire for information about a wireless terminal (e.g., a phone) within the cellular network." The alleged infringement is contingent upon Sprint's messaging servers being external to its cellular network. *Comcast v. Sprint II*, 2016 WL 4478756, *7–8 (emphasis added).

During the infringement period, a small number of Sprint's messaging servers were provided by outside entities, including one MMSC operated by Syniverse. *See, e.g.*, Sprint's Mot. *in Limine* of Dr. Akl and Mot. for Summary Judgment of Non-Infringement Regarding Sprint's Non-Syniverse Messaging Servers("Sprint's Mot."), Ex. C, Expert Report of Dr. Robert Akl, D.Sc., Regarding Infringement of U.S. Patent No. 6,885,870 ("Akl Report"), ¶ 188. These messaging servers are not at issue in the pending Motion. In this Motion, Sprint challenges those portions of Dr. Akl's testimony in which he opines that Sprint's non-Syniverse messaging servers are external to Sprint's cellular network. Sprint's Mot. at 2. Specifically, Sprint argues that Dr. Akl relies exclusively on a construction of a crucial patent term, "cellular network," that conflicts with the Court's adopted construction of that term. *Id.* at 5–8. It is Sprint's position that Dr. Akl's opinion regarding the non-Syniverse servers must be excluded because it is based on a construction of the term cellular network which was rejected by the Court. *Id.* For the reasons set forth below, the Court disagrees.

### A.     Legal Standard

"The purpose of a motion *in limine* is to decide the admissibility of evidence." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 5451495, at *2 (W.D.

Pa. Nov. 7, 2012). In a patent case, when the Court has construed patent terms, "[i]t is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings." *In re Maxim Integrated Prod., Inc.*, No. 12-244, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015). Put another way, when an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

### B.    Discussion

Sprint moves to exclude the expert testimony of Dr. Akl as to Sprint's non-Syniverse messaging servers based on the Court's construction of the term cellular network. In its Memorandum and Order of August 24, 2016, the Court construed cellular network in an open-ended manner, and explicitly rejected a closed construction offered by Comcast.[6] *Comcast v. Sprint II*, 2016 WL 4478756, at *13–28. Sprint argues that Dr. Akl's expert opinion necessarily "contradict[s] or disregard[s]" the Court's claim construction because it is based entirely on Comcast's now-rejected construction of cellular network. Sprint's Mot. at 5, 8.

In support of its argument, Sprint points to two excerpts from the Court's Memorandum of August 24, 2016. Sprint's Mot. at 2. In that Memorandum, the Court observed in passing that

---

[6] Comcast proposed that cellular network be construed as "[a] network composed of: (a) a wireless terminal; (b) a base station system for communicating with the wireless terminal; and (c) a core network of subscriber databases, mobile switching centers, and packet-switching support nodes (if any), for routing communications between the base station system and external networks." Sprint proposed construing that term as "[a] network comprising a wireless terminal, a base station system, and core network elements that are interconnected using IP or other protocols." *Comcast v. Sprint II*, 2016 WL 4478756, at *13. The Court construed the term as "a network comprised of a wireless terminal, a base station system for communicating with the wireless terminal, and core network elements, which may include subscriber databases (such as a home location register), mobile switching centers, packet switching nodes, and messaging servers." *Id*. at *28.

"Dr. Akl offered no opinion of his own as to how a person of ordinary skill would determine if an element is internal or external because he relied solely on Comcast's claim construction of the term 'cellular network,' which the Court has now rejected." *Comcast v. Sprint II*, 2016 WL 4478756, at *68. The Court made a similar statement later in its analysis. *Id.* at 69.[7] But those statements were not the focal point of the Court's discussion. The Court, in making those statements, did not consider the admissibility of Dr. Akl's opinions because they were not then at issue. They were included merely to support the Court's rejection of Comcast's challenge to the reliability of Sprint's liability expert, Mr. Lanning. Indeed, although Sprint had filed a *Daubert* motion challenging certain experts, it did not challenge Dr. Akl's opinions. Since the parties have now fully briefed this question, the Court considers for the first time the basis for Dr. Akl's expert opinions.

The Court concludes that Dr. Akl does articulate a basis for his expert opinion independent of Comcast's construction such that he can "offer an opinion on how [the] court's claim construction should be applied to the facts of a case." *In re Maxim Integrated Prod.*, 2015 WL 5311264, at *4. However, the Court agrees with Sprint that Dr. Akl frequently relies on Comcast's now-rejected claim construction in his expert reports and deposition testimony. Dr. Akl may not offer any opinion at trial which is based on a construction of cellular network that contradicts the Court's construction.

### 1.    *The Court's Construction of Cellular Network*

In its Memorandum and Order of August 24, 2016, the Court construed cellular network to mean "a network comprised of a wireless terminal, a base station system for communicating with the wireless terminal, and core network elements, which may include subscriber databases

---

[7] These quotations have been amended by separate Order.

(such as a home location register), mobile switching centers, packet switching nodes, and messaging servers." *Comcast v. Sprint II*, 2016 WL 4478756, at *28. In their claim construction briefs, the parties agreed that a cellular network included a group of "core network elements," but disagreed as to what elements could be part of the core network. *Id*. at *13. Comcast argued that the core network could include only three types of network elements: "subscriber databases, mobile switching centers, and packet-switching support nodes (if any), for routing communications between the base station system [("BSS")] and external networks." *Id*. Sprint argued for an open-ended definition that could include "elements that are interconnected using IP or other protocols." *Id*. The Court rejected Comcast's approach, and adopted instead a variant of Sprint's open-ended construction, as quoted above. *Id*. at *25–28.

The Court's construction left open the precise definition of the word "core" because that term "is a common word that will be understood by a lay jury." *Comcast v. Sprint II*, 2016 WL 4478756, at *27. However, "to provide clarity as to what elements may be 'core network elements,' the Court [provided] a nonexclusive list" of possible elements:

> One core network element is a "subscriber database." . . . Second, mobile switching centers and packet switching nodes, the servers that are involved in circuit switching or packet routing between the base station system and other networks, are core network elements. . . . Third, messaging servers may be a core network element, as in the messaging center of the CDMA2000 standard.

*Id*. at *27.

### 2. *Dr. Akl's Expert Opinions are Not Based Entirely on Comcast's Now-Rejected Construction of the Term Cellular Network*

Contrary to Sprint's argument, Dr. Akl has provided a basis, independent of Comcast's now-rejected construction of cellular network, for his expert opinion that Sprint's non-Syniverse messaging servers are external to Sprint's cellular network. First, Dr. Akl explicitly argues that even under Sprint's construction, the non-Syniverse servers are "external" to Sprint's cellular

network. Second, Dr. Akl provides interpretations of the term "core" that allow him to apply the Court's construction to the facts in this case.

First, Dr. Akl explicitly articulates a basis for his opinion outside of Comcast's construction of cellular network. For example, he opines that "even if Sprint's construction were adopted, [Sprint's SMSCs and MMSCs] are also external to Sprint's cellular network." Akl Report ¶ 303, n. 24; ¶ 367, n. 26; *see also* Comcast's Mem., Ex. 2, Responsive Expert Report of Dr. Robert Akl, D.Sc. Regarding Validity of U.S. Patent No. 6,885,870 ("Akl Resp. Report"), ¶ 73, 241 n.13. He also opines that "[u]nder Sprint's proposed construction . . . it is my opinion that Sprint's messaging servers . . . are external to Sprint's cellular network." Sprint's Mot., Ex. D, Reply Expert Report of Dr. Robert Akl, D.Sc., Regarding Infringement of U.S. Patent No. 6,885,870 ("Akl Reply Report"), ¶ 84. Specifically, using Sprint's open-ended construction, Dr. Akl concludes that "as of the priority date of the '870 patent . . . core network elements did not include [SMSCs or MMSCs]." Akl Report ¶ 303, n. 24; ¶ 367, n. 26 (referencing Akl Report ¶¶ 71, 75). This conclusion is based in part on Dr. Akl's opinion that, as of the priority date of the '870 patent, messaging servers were not "a critical network node of the cellular network itself." *See id*. ¶ 71. Thus, some of Dr. Akl's opinions are not dependent on Comcast's construction of cellular network.

Sprint argues that even where Dr. Akl purports to provide alternative bases for his opinion, he "falls back on Comcast's close-ended construction." Sprint's Mot. at 7. For example, Dr. Akl opines that core network elements did not include SMSCs and MMSCs at the priority date of the '870 patent in part because, at that time, "the core network elements of cellular networks included subscriber databases, MSCs, and packet switching support nodes." Akl Report ¶ 303, n. 24; ¶ 367, n. 26; Sprint's Mot. at 7–8. These functions correspond with the elements

listed in Comcast's construction, and so Sprint contends Dr. Akl's conclusion is based on that rejected construction.

Dr. Akl may not rely solely on Comcast's rejected construction in his testimony. However, although Dr. Akl lists Comcast's construction as one basis for these opinions, Dr. Akl also provided sufficient alternative bases, discussed *supra*, for his opinion that Sprint's messaging servers are external to its cellular network. The Court thus rejects Sprint's argument that Dr. Akl relies *exclusively* on Comcast's construction.

Second, Dr. Akl offers expert opinions on which Sprint servers were core network elements. As noted above, the Court left open the precise definition of that term because it "is a common word that will be understood by a lay jury." *Comcast v. Sprint II*, 2016 WL 4478756, at *27. Based on that construction, Dr. Akl may opine on what constitutes a core network element in order to "offer an opinion on how [the] court's claim construction should be applied to the facts of a case." *In re Maxim Integrated Prod.*, 2015 WL 5311264, at *4. A core network element, according to Dr. Akl, is "an essential core element in the network" that "needs to be [in the network]." Comcast's Memorandum in Opposition to Sprint's Motions ("Comcast's Mem."), Ex. 3, Deposition of Robert Akl ("Akl Depo."), 46:14–17. More abstractly, Dr. Akl states that core network elements encompass those elements that "are the infrastructure for connecting the radio access elements to other public or private networks through circuit and data packet switching elements[, including] network components that are used by external networks and services to communicate with the radio access network components." Akl Report ¶ 44. For example, Dr. Akl opines that Sprint's cellular network includes "a core network portion, for routing communication between the BSSs and external networks, that includes . . . circuit switching elements . . . [and] subscriber databases." *Id.* ¶ 111–12. These opinions are not based

on Comcast's construction of cellular network, and Dr. Akl may properly rely on them insofar as they do not contradict the Court's open-ended construction.

### 3.    Limitations on Dr. Akl's Testimony at Trial

The Court concludes Dr. Akl has articulated a sufficient foundation for his expert opinion that does not contradict the Court's construction of the term cellular network. However, Sprint is correct that Dr. Akl repeatedly quotes and defers to Comcast's construction, which the Court has rejected. A testifying expert "cannot offer an opinion that contradicts or disregards a court's claim construction rulings." *In re Maxim Integrated Prod., Inc.*, 2015 WL 5311264, at *4; *see also Cordis Corp.*, 658 F.3d at 1357. Therefore, Dr. Akl will not be permitted to contradict or disregard the Court's construction of cellular network in his testimony at trial. Although the Court declines to comprehensively parse Dr. Akl's opinions, the Court emphasizes that he may not, *inter alia*, testify that (1) a core network is *inherently limited* to those elements articulated in Comcast's construction, and (2) a messaging server is *per se* external to a cellular network.

First, Dr. Akl may not state or imply that the core network within cellular network is limited to the elements listed in Comcast's construction. As discussed *supra*, the Court adopted an open-ended construction of cellular network. *Comcast v. Sprint II*, 2016 WL 4478756, at *28; *supra* at III(B)(1). The Court flatly rejected Comcast's construction, which would have limited the core network elements to "subscriber databases, mobile switching centers, and packet-switching support nodes (if any), for routing communications between the base station system and external networks." *Id*. at *24.

Most obviously, Dr. Akl may not explicitly rely on Comcast's construction of cellular network as a basis for his testimony. For example, Dr. Akl may not testify that he understands the core network to be inherently limited to the three elements listed in Comcast's construction,

as he has repeatedly opined in his expert reports and deposition testimony. *See*, *e.g.*, Akl Resp. Report ¶ 71; Akl Report ¶ 86; Akl Reply Report ¶ 103, 114; Akl Depo. 48:3–5, 103:16–19. But Dr. Akl must also refrain from *implying* that the core network is inherently limited to those three elements. For example, in his opening report, Dr. Akl states that core network elements "include the gateway infrastructure that allows circuit and data packet switching between the radio access network and external networks." Akl Report ¶ 46. He continues by identifying "[t]he other 'core' elements" as "the network subscriber databases[.]"Akl Report ¶ 47. By beginning the second statement with "*[t]he other* 'core' elements," Dr. Akl implies that there are no other entities that could be considered core elements. He may not do so at trial.

Second, Dr. Akl will not be permitted to testify that a messaging server is *per se* external to a cellular network merely because it is not part of Comcast's list of core network elements. This constraint is simply the mirror image of the analysis above—just as the elements of a core network are not limited under the Court's construction, that construction does not *per se* exclude messaging servers from the core network. For example, employing the elements listed in Comcast's construction as a "checklist" implies that a messaging server may never be an element of a core network. Dr. Akl is therefore prohibited from testifying that a particular element is external to the cellular network merely because it is not part of such a checklist, as he did in portions of his reports and deposition. *See*, *e.g.*, Akl Report ¶ 303; Akl Depo. 82:11, 110:19–24; *see also* Akl Report ¶¶ 71, 75 (stating MMSCs and SMSCs are not core network elements because "[t]hey do not provide mobile phones with radio access to the mobile network, or perform circuit or data packet switching functions").

Sprint argues that Dr. Akl's testimony should be constrained even further. Specifically, Sprint argues that Dr. Akl should be prohibited from testifying that (1) messaging servers are

external to certain CDMA2000 standards, and (2) messaging servers are part of a cellular network only when they also perform what he understands as core network functions. The Court declines to adopt these limitations on his testimony.

First, Sprint urges that Dr. Akl should be prohibited from testifying that messaging servers are external to certain CDMA2000 standards, because that position is contrary to the Court's analysis. Sprint Mot. at 8–10, 12–15. In supporting its construction of cellular network, the Court analyzed the "Network Reference Models" of the CDMA2000 1997 and 1999 standards. *Comcast v. Sprint II*, 2016 WL 4478756, at *21–26 (citing Sprint Opening Claim Construction Brief, Ex. D, Cellular Radiotelecommunications Intersystem Operations, at 1-24; Ex. E, Network Reference Model for CDMA2000 Spread Spectrum Systems, Revision A, at 3). The Court observed that "the CDMA2000 network standards . . . indicate messaging servers as possible elements of the cellular network." *Comcast v. Sprint II*, 2016 WL 4478756, at *25. Sprint argues that Dr. Akl's opinion on infringement of the '870 patent is "contradictory to the Court's ruling." Sprint Mot. at 13. For example, Dr. Akl "disagree[s] that the [CDMA2000 standard documents] anywhere describe a core network of a cellular network that includes any messaging server." Akl Reply Report ¶ 27–28. He also opines that "in a CDMA-based system, the SMSCs are not implemented as part of the cellular network." Akl Reply Report ¶ 184 ; *see also* Akl Report ¶¶ 28–38 (analyzing the CDMA2000 1997 and 1999 Network Reference Models).

Sprint's argument fails. Although an expert may not contradict the Court's claim construction, *In re Maxim Integrated Prod.*, 2015 WL 5311264, at *4, the Court's claim construction rulings define only the scope of the '870 patent; they do not address the question of whether Sprint's network infringes the claims of the patent as construed. Analysis supporting

that claim construction, such as the Court's discussion of the CDMA2000 standards, are not binding on the expert. As the Court stated in the claim construction opinion, whether Sprint's CDMA-based cellular network infringes the claims of the '870 patent is a question of fact. The Court's claim construction provides the framework for an infringement analysis but does not answer the infringement question. Thus, Dr. Akl's analysis of the CDMA2000 standards is not limited by the Court's discussion.

Second, Sprint argues Dr. Akl should be barred from opining that a messaging server is internal to a cellular network *only* when it is paired with another core network element. For example, Dr. Akl has opined that messaging servers can be internal to the cellular network "if they also include the functionality of an MSC or other core network element." Akl Reply Report ¶ 184. Dr. Akl elsewhere opines that only "'messaging server' functionality can be internal to the cellular network." *Id*. at ¶ 60; *see also id*. at 16, 77; Akl Depo. 134:15–135:2. Sprint argues that this interpretation is incompatible with the Court's construction of cellular network, which states that "core network elements . . . may include subscriber databases (such as a home location register), mobile switching centers, packet switching nodes, *and messaging servers*." Sprint Mot. at 10–12; *Comcast v. Sprint II*, 2016 WL 4478756, at *28 (emphasis added).

The Court rejects this argument as well. The Court's construction provides only that a messaging server *may* be a core network element of a cellular network, without elaboration. For example, the Court did not decide whether a server must stand alone in order to be considered internal or external. That inquiry is a fact question that the jury must decide based on the strength of the experts' testimony. So long as Dr. Akl does not base this opinion on Comcast's rejected claim construction, his approach is not incompatible with the Court's claim construction.

IV.     **SPRINT'S MOTION FOR SUMMARY JUDGMENT**

Sprint's Motion for Summary Judgment argues that if Dr. Akl is precluded from testifying regarding the non-Syniverse messaging servers, Comcast will have no expert testimony on which to base its infringement claims. "[I]n a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying *only* on testimony from those who are admittedly not expert in the field." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) (emphasis added). Without Dr. Akl's expert testimony, Sprint argues, Comcast cannot meet this burden as to the non-Syniverse messaging servers, and so summary judgment must be granted in Sprint's favor.

Sprint's Motion for Summary Judgment is contingent on the granting of its Motion *in Limine* in its entirety, and the Court has not done so. The Court has only granted that Motion in part, and has permitted Dr. Akl to testify at trial, subject to several limitations. With such testimony, there is evidence upon which to base Comcast's infringement claims as to the non-Syniverse messaging servers. Sprint's Motion for Summary Judgment is therefore denied.

V.      **CONCLUSION**

Sprint's Motion *in Limine* of Dr. Akl is granted in part and denied in part. That Motion is granted to the extent that Dr. Akl based his opinions on Comcast's rejected construction of the term cellular network or on a construction of that term that is inconsistent with the construction adopted by the Court, and denied in all other respects. Sprint's Motion for Summary Judgment of Non-Infringement Regarding Sprint's Non-Syniverse Messaging Servers is denied.

An appropriate order follows.

14