```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                        - - -

COMCAST CABLE COMMUNICATIONS, :  CIVIL ACTION NO. 12-0859
LLC, et al.,                  :
            Plaintiffs        :
                              :
        v.                    :  Philadelphia, Pennsylvania
                              :  February 17, 2017
SPRINT COMMUNICATIONS         :  9:40 o'clock a.m.
COMPANY L.P., et al.,         :
            Defendants        :
. . . . . . . . . . . . . .   :


                  JURY TRIAL - DAY 14
            BEFORE THE HONORABLE JAN E. DUBOIS
          SENIOR UNITED STATES DISTRICT COURT JUDGE


                        - - -


APPEARANCES:

For the Plaintiffs:      DANIEL J. GOETTLE, ESQUIRE
                         DALE M. HEIST, ESQUIRE
                         Baker & Hostetler, LLP
                         Cira Centre, 12th Floor
                         2929 Arch Street
                         Philadelphia, PA  19104-2891

                         WILLIAM T. HANGLEY, ESQUIRE
                         REBECCA SANTORO MELLEY, ESQUIRE
                         Hangley Aronchick Segal & Pudlin
                         One Logan Square, 27th Floor
                         Philadelphia, PA   19103

                         GEORGE MEDLOCK, ESQUIRE
                         Comcast Cable Communications
                         Chief Patent Counsel


                Laws Transcription Service
                  48 W. LaCrosse Avenue
                  Lansdowne, PA  19050
                     (610)623-4178
```

```
APPEARANCES: (Continued)

For the Defendants:     DAVID E. FINKELSON, ESQUIRE
                        BRIAN C. RIOPELLE, ESQUIRE
                        JUSTIN R. LOWERY, ESQUIRE
                        McGuire Woods, LLP
                        Gateway Plaza
                        800 East Canal Street
                        Richmond, VA  23219

                        COLLEEN H. SIMPSON, ESQUIRE
                        Harkins Cunningham, LLP
                        4000 Two Commerce Square
                        2001 Market Street
                        Philadelphia, PA  19103

                            - - -

Audio Operator:         Michael Cosgrove

Transcribed by:         Geraldine C. Laws, CET
                        Paula Curran, CET

(Proceedings recorded by For The Record electronic sound
recording; transcript produced by AAERT-certified
transcribers.)
```

3

1          (The following occurred in open court at 9:40

2     o'clock a.m.)

3          THE COURT:  Good morning, everyone.

4          ALL:  Good morning, your Honor.

5          THE COURT:  Please be seated.  We have one issue to

6     discuss, and that is the charge on obviousness.  Who is going

7     to speak first?  Mr. Riopelle.

8          MR. RIOPELLE:  Your Honor, we have looked at it, we

9     actually did some research on it and it's our conclusion that

10    except for the objection that we've already put on the record

11    that the obviousness charge as given is fine to cover the two

12    issues that we were addressing yesterday, and that's because

13    further down into --

14          THE COURT:  Let me turn there.

15          Okay.

16          MR. RIOPELLE:  So for example in the one, two,

17    three, fourth paragraph, towards the end of the fourth

18    paragraph it talks about to combine the known elements.  And

19    then in the paragraph numbered one it says using prior art

20    elements.  In numbered paragraph three it says combining

21    elements.  In four it says combining elements and in five it

22    says combinations of elements.  So I believe it is covering

23    and the case law appears to treat this as covering a

24    combination of elements from separate pieces of prior art or

25    from prior art and something known to someone of ordinary

1   skill in the art.

2           THE COURT:  Thank you.

3           MR. GOETTLE:  Your Honor, Comcast is also fine with

4   the instruction.  And in addition to what Mr. Riopelle just

5   pointed out, well we did go back and look at the Federal

6   Circuit Bar Association's rules and the ALTIA rules and what

7   you instructed the jury on yesterday is consistent with those

8   rules.  And in addition to what Mr. Riopelle pointed out,

9   also on page 32 where they're scoping content of the prior

10  art instruction, we think between this your instructions have

11  covered what they need to cover.

12          THE COURT:  All right.  There are alternatives.  The

13  Federal Circuit has really complicated, I think, the law

14  applicable to obviousness because there is authority

15  including an alternative instruction in the Federal Circuit

16  Bar Association Model Patent Jury Instructions, whereby the

17  jury makes findings of fact and the Judge decides the

18  obviousness issue.

19          There's agreement and I have no problem with the

20  charge as it's drafted.

21          I think what I'll do is call the jury in -- where's

22  Milahn?  Tell them the charge is as we have given it to them

23  and we'll deliver the black notebooks.  Better tell them that

24  they will have ordered lunch.  Again remind them about the

25  schedule today, and tell them we want a note at 4:15 as to

```
1    what their intentions are tonight.

2             Do you want to bring the jury in?

3             MR. RIOPELLE:  How about a note no later than 4:15?

4             THE COURT:  Pardon me?

5             MR. RIOPELLE:  How about saying a note no later than

6    4:15?  I don't want to encourage them they have to stay until

7    4:15.

8             THE COURT:  No.

9             MR. GOETTLE:  Your Honor?  Just while we're waiting

10   for the jury I just wanted to point out Mr. Hangley had a

11   doctor's appointment and that's why he's not here.  I just

12   wanted to point out that he didn't just will-nilly not

13   appear.

14            THE COURT:  Thank you.

15            (Jury enters the courtroom at 9:45 o'clock a.m.)

16            THE COURT:  Good morning, everyone.  Please be

17   seated.

18            After you left last night I talked to counsel again

19   about the charge.  They thought about it overnight.  I did,

20   too.  And we've decided that it does not need anything else.

21   There will be no additional instructions on the law.  Of

22   course if you have a question, as I've told you, you should

23   have the foreperson write the question out, submit it to the

24   person who will be by the jury room door and we'll answer it.

25            That means these three black notebooks you're
```

6

1    looking at will be provided to you.  It includes the entire

2    charge.  Again keep in mind that there's a table of contents,

3    make it easier for you to get from a question to the right

4    subject and then the instructions on that subject.

5             Schedule for today.  Ms. Hull, has lunch been

6    ordered?

7             DEPUTY CLERK HULL:  Lunch has been ordered to arrive

8    around 12:30.

9             THE COURT:  Good, fine.

10            You'll begin your deliberations now.  I'm not going

11   to set a schedule, but I think it's possible you'll reach a

12   verdict early in the afternoon.  It's also possible that you

13   might not.  If you haven't reached a verdict by 4:15 I want

14   you to send me a note.  Your foreperson should send me a note

15   telling me what you want to do.  The alternatives are go home

16   and come back on -- I hate to say this, but it would be

17   Tuesday because Monday is a legal holiday; stay and not have

18   dinner, and in that case if you miss a train or a bus or a

19   ride and need transportation, Ms. Hull is the person to talk

20   to.  We don't want you hanging around train stations or bus

21   terminals late at night.  We don't want you to have to wait.

22            The third alternative would be stay and have dinner.

23   As I told you and I'm smiling as I say this because I've seen

24   the dinners, you would not want to come back to the

25   courthouse for dinner in the future based on our dinners, but

7

1    at least it gives you something to eat.  I hope you've been

2    getting breakfast.  I'm getting a nod from Ms. Hull, that's

3    good.

4              So you're to begin your deliberations.  Again if you

5    reach a verdict early afternoon, that's fine.  You'll follow

6    the instructions on the verdict sheet.  If you haven't

7    reached a verdict by 4:15, please send me a note telling me

8    what you want to do.

9              All right, is there anything else, Counsel?  Mr.

10   Goettle?

11             MR. GOETTLE:  No, your Honor.

12             MR. FINKELSON:  No, your Honor.

13             THE COURT:  Fine.

14             DEPUTY CLERK HULL:  All rise.

15             (Jury exits the courtroom at 9:49 o'clock a.m.)

16             THE COURT:  Be seated, everyone.

17             As I said, we're not going to require you to hang

18   around the courthouse, but we don't want to call 127 lawyers.

19   Who will be the contact people?  Do we have your cell phone

20   numbers?

21             MR. FINKELSON:  I believe you do, but I'll make sure

22   Ms. Hull has them before I go anywhere.

23             THE COURT:  Where would you be thinking of going?

24             MR. FINKELSON:  The 11th floor.  (Laughter.)  And

25   maybe just outside.  I'm not going far.

8

1          THE COURT:  Is something going on on the 11th floor,

2     or was that said in jest?

3          MR. FINKELSON:  No, that's where our room is so it's

4     become our home away from home is down there.  Ms. Hull has

5     set us up with two rooms down there which has worked out very

6     well.  But I'm not going far, your Honor.

7          MR. GOETTLE:  I'm going to go to the Constitution

8     Center.  I'm kidding.  We'll be right here.  (Laughter.)

9          THE COURT:  No, that's great.  I bumped into Jeff

10    Rosen at the opera looking very relaxed.  I was not looking

11    very relaxed.  He is the CEO of the Constitution Center and

12    really, if you haven't seen it, it's really quite

13    spectacular.

14         MR. GOETTLE:  I agree.

15         THE COURT:  It's certainly worth the trip.

16         All right.  Well, we'll get your contact numbers and

17    we'll call you if they have any questions and certainly if

18    they have a verdict.

19         All right, is there anything else we have to do?

20         MR. GOETTLE:  No, your Honor.

21         MR. FINKELSON:  No, your Honor.  Thank you.

22         THE COURT:  All right then we're in recess.  I'm

23    going to stay up here and try to clean up (laughter) a little

24    bit.

25              (Recess taken from 9:51 o'clock a.m. until 3:56

1    o'clock p.m.)

2              THE DEPUTY CLERK:  All rise.

3              THE COURT:  Good afternoon, everyone.

4              ALL:  Good afternoon, your Honor.

5              THE COURT:  Be seated, please.  I've been told the

6    jury has reached a unanimous verdict.  So, we will call the

7    jury in.

8              (Pause.)

9              THE DEPUTY CLERK:  All rise.

10             (Jury enters.)

11             THE COURT:  Be seated, everyone.  I have been told

12   that you've reached a unanimous verdict.  Good and has the

13   foreperson completed the verdict sheet in accordance with

14   instructions?  Ms. Hull, will you retrieve the verdict sheet.

15   Thank you.

16             (Pause.)

17             THE COURT:  All right, you've answered all of the

18   questions in accordance with my instructions.  Let the

19   verdict be recorded, Ms. Hull.

20             THE DEPUTY CLERK:  Members of the jury, please rise.

21   Members of the jury, have you agreed upon your verdict based

22   on the verdict slip from the Court?

23             JURORS:  Yes.

24             THE DEPUTY CLERK:  The jury unanimously agrees to

25   the following verdict.

1          Question Number 1, Did Comcast prove by a

2    preponderance of the evidence that Sprint had infringed any

3    of the filing claims of the '870 Patent by providing SMS and

4    MMS messaging service other than Syniverse Picture Mail,

5    Claim 1?

6              THE FOREPERSON:  Yes.

7              THE DEPUTY CLERK:  Claim 7?

8              THE FOREPERSON:  Yes.

9              THE DEPUTY CLERK:  Claim 113?

10             THE FOREPERSON:  Yes.

11             THE DEPUTY CLERK:  Question 2, did Sprint prove by

12   clear and convincing evidence that any of the following

13   claims of the '870 Patent are invalid as anticipated by a

14   single prior art reference, Claim 1?

15             THE FOREPERSON:  No.

16             THE DEPUTY CLERK:  Claim 7?

17             THE FOREPERSON:  No.

18             THE DEPUTY CLERK:  Claim 113?

19             THE FOREPERSON:  No.

20             THE DEPUTY CLERK:  Did Sprint --

21             THE COURT:  Question 3.

22             THE DEPUTY CLERK:  Question 3, I'm sorry.  Did

23   Sprint prove by clear and convincing evidence that any of the

24   following claims of the '870 Patent are invalid as obvious at

25   the time of the invention to a person of ordinary skill in

1   the art.  Claim 1?

2          THE FOREPERSON:  No.

3          THE DEPUTY CLERK:  Claim 7?

4          THE FOREPERSON:  No.

5          THE DEPUTY CLERK:  Claim 113?

6          THE FOREPERSON:  Yes.

7          THE DEPUTY CLERK:  Question 4, what sum of money, if

8   any, do you find that Comcast has proven by a preponderance

9   of the evidence is adequate to compensate Comcast for

10  Sprint's infringement of the '870 Patent?

11         THE FOREPERSON:  $1.5 million.

12         THE DEPUTY CLERK:  Question 5, is the sum of money

13  identified in your answer to Question 4 the total sum an

14  ongoing royalty for messages sent or received through

15  September 30, 2016?

16         THE COURT:  Or -- well you have to check one.

17         THE DEPUTY CLERK:  It didn't --

18         THE COURT:  Or a one-time lump sum royalty for the

19  life of the '870 Patent.  Which line did you check?

20         THE FOREPERSON:  A one-time.

21         THE COURT:  Read the whole thing, please.

22         THE FOREPERSON:  A one-time, lump sum royalty for

23  the life of the '870 Patent.

24         THE COURT:  Thank you.  And then you signed the

25  verdict sheet as the foreperson and dated it, is that

1   correct?

2           THE FOREPERSON:  Yes, your Honor.

3           THE COURT:  Thank you.  Will you retrieve the

4   verdict sheet, please, Ms. Hull?

5           THE DEPUTY CLERK:  Yes.

6           THE COURT:  And you may be seated, ladies and

7   gentlemen.  Does either party have a request for polling?

8           MR. HANGLEY:  Yes, your Honor.

9           THE COURT:  All right.  It's customary, ladies and

10  gentlemen, for the parties to ask each juror whether the

11  verdict read by the foreperson is their verdict and we're

12  going to do that now with respect to each of you.  Ms. Hull?

13          THE DEPUTY CLERK:  Will each juror rise as I state

14  your number, please?  Juror Number 1, do you agree with the

15  verdict as stated by the foreperson?

16          JUROR NO. 1:  Yes.

17          THE DEPUTY CLERK:  Thank you.  Juror Number 2, do

18  you agree with the verdict as stated by the foreperson?

19          JUROR NO. 2:  Yes.

20          THE DEPUTY CLERK:  Thank you.  Juror Number 3, do

21  you agree with the verdict as stated by the foreperson?

22          JUROR NO. 3:  Yes.

23          THE DEPUTY CLERK:  Juror Number 4, do you agree with

24  the verdict as stated by the foreperson?

25          JUROR NO. 4:  Yes.

1          THE DEPUTY CLERK:  Thank you.  Juror Number 5, do

2   you agree with the verdict as stated by the foreperson?

3          JUROR NO. 5:  Yes.

4          THE DEPUTY CLERK:  Juror Number 7, do you agree with

5   the verdict as stated by the foreperson?

6          JUROR NO. 7:  Yes.

7          THE COURT:  Juror Number 8, do you agree with the

8   verdict as stated by the foreperson?

9          JUROR NO. 8:  Yes.

10          THE DEPUTY CLERK:  And Juror Number 9, is the

11   verdict stated by you, here in open court, your true and

12   correct verdict?

13          JUROR NO. 9:  Yes.

14          THE DEPUTY CLERK:  Thank you.

15          THE COURT:  Thank you.  Let the verdict be recorded.

16          THE DEPUTY CLERK:  Members of the jury, please rise.

17   Members of the jury, hearken to your verdict as the Court has

18   recorded it in the issue joined in Civil Action Number 12-

19   859, wherein Comcast Cable Communications, LLC, as plaintiff

20   and Sprint Spectrum, LP is defendant, you answered the

21   questions as follows:

22          Question Number 1, did Comcast prove by a

23   preponderance of the evidence that Sprint has infringed any

24   of the following claims of the '870 Patent by providing SMS

25   and MMS messaging through messaging servers other than

1   Syniverse Picture Mail.  For Claim 1, yes.  For Claim 7, yes.

2   And Claim 113, yes.

3          Question Number 2, did Sprint prove by clear and

4   convincing evidence that any of the following claims of the

5   '870 Patent are invalid as anticipated by a single prior art

6   reference?  For Claim 1, no.  For Claim 7, no.  Claim 113,

7   no.

8          Question Number 3, did Sprint prove by clear and

9   convincing evidence that any of the following claims of the

10  '870 Patent are invalid as obvious at the time of the

11  invention to a person of ordinary skill in the art?  Claim 1,

12  no.  Claim 7, no.  Claim 113, yes.

13         Question 4, what sum of money, if any, do you find

14  that Comcast has proven by a preponderance of the evidence is

15  adequate to compensate Comcast for Sprint's infringement of

16  the '870 Patent?  $1.5 million.

17         Lastly, question 5, is the sum of money identified

18  in your answer is a one-time lump sum royalty for the life of

19  the '870 Patent?  And so say you all?

20         JURORS:  Yes.

21         THE COURT:  Thank you very much.  You may be seated.

22  Are there any applications or motions that the parties seek

23  to advance at this time?  I don't see the need for any.

24         MR. HANGLEY:  None at this time, your Honor.

25         MR. FINKELSON:  None at this time, your Honor.

1          THE COURT:  Fine.  Well, it's been a long three

2     weeks.  You've heard a lot of evidence and it was very

3     technical and very complicated and you paid rapt attention.

4     I watched you as we proceeded through the trial and there

5     were no times, that I observed, when you were not doing

6     exactly what was expected of you and that is listening to the

7     evidence, trying to absorb it and as you left for your

8     deliberations, I was convinced that you would take your jobs,

9     your duties very seriously and endeavor to reach a verdict.

10    And you've done all of that, you've done what was expected of

11    you and you should feel very good about that.

12          We read a lot about litigation, about cases that are

13    filed, but until you serve on the jury, you really don't know

14    how the system works.  And now you know how the system works

15    and you learned it, I might say, in a case in which the

16    learning process had to be very, very difficult.  And you

17    should feel very good about all of that.

18          I told you during the trial that you could not

19    discuss the case with anyone at home.  And now, of course,

20    you may do so.  I encourage you to discuss the case from the

21    procedural perspective.  You don't have to discuss the

22    merits, but you can.  But I encourage you do discuss the

23    process with the folks at home, because very few people know

24    anything other than what we see on television when it comes

25    to cases that are tried in Federal and State Courts.  You've

1    be part of it.  You've experienced jury selection, as you've

2    heard the presentation of evidence.  And I think it's safe to

3    say the presentation of this rather complicated case was

4    about as good as it gets.  I think the lawyers did their very

5    best to make certain that the evidence was presented in a way

6    that was as easy to understand as you could make it and

7    that's a difficult chore.

8            I thought the lawyering on both sides was as good as

9    I've seen in any case in which I've presided.  And I've

10   presided in a number of cases.  I've been on the bench for

11   quite some time.

12           When discussing the case with others and again, this

13   is your call, you don't have to and no one is permitted to

14   ask you, unless you agree, is permitted to ask you about how

15   you reached your verdict.  But if you talk about the merits

16   of the case, I urge you, not ordering you, I urge you to

17   respect the privacy of the other members of the jury.  You

18   certainly can talk about how you voted and why you voted.

19   But I urge you to respect the privacy of the comments made by

20   other jurors.

21           Now, I haven't seen any reporters in the courtroom,

22   but when the verdict is announced, they might very well come

23   calling.  Either by telephone or e-mail or whatever and you

24   certainly may talk to them.  But you can also say no and they

25   know that if you say no, that's the end of the discussion.

1   You do not have to explain your verdict to anyone.

2          And now, my thanks and the thanks of all of my

3   colleagues and the parties in this case for your service.

4   You gave up three weeks.  I hope it's been an interesting

5   experience.  I'm going to, as soon as I finish a few details

6   with counsel, among other things, I've got to get rid of

7   hundreds of exhibits that are sitting in the corner that we

8   haven't had need to look at.  But the bottom line, I want to

9   come in and talk to you, so unless you have something urgent-

10  urgent to do, wait just a few minutes.  It will take me just

11  a few minutes in the courtroom and then I will come in and

12  talk to you.  If you wish to talk to counsel, they will

13  remain in the courtroom.  But that's your call and there are

14  two ways out of your jury room.  The straight way, which

15  doesn't bring you into the courtroom, you can just leave.  Or

16  you can come into the courtroom and talk to counsel.  Your

17  call.

18         All right, with that, Ms. Hull, we will release the

19  jury, again, with my thanks and the thanks of counsel.

20             THE DEPUTY CLERK:  All rise.

21             (Jury excused.)

22             THE COURT:  Be seated, everyone.  I'm not going to

23  comment on the verdict.  They certainly got there in about

24  six hours.  They started deliberating at 10:00 o'clock.  I

25  really think they absorbed what you presented as best they

1   could.  And I don't know what I an expect in the future, but

2   I remind you that to me, at least, less is more and I shudder

3   to think about the pile of papers that you can generate with

4   about 30 or 40 of you and only two of us.  But I encourage

5   you, if you can see your way clear, to skip the next step in

6   this court and if you have any further proceedings, that you

7   try another court, the one that sits -- I think I'm going

8   south.  No, I'm not, south is that way -- the one that sits

9   in Washington.

10          I really meant what I said about the way the case

11   was tried.  It was really a pleasure and gave me an

12   opportunity to meet some fine new lawyers and to pick on

13   Hangley, because we've known one another for a long, long

14   time.  And I think the lawyering was just superb.

15          MR. FINKELSON:  Thank you, your Honor.

16          MR. RIOPELLE:  Thank you.

17          MR. GOETTLE:  Thank you.

18          THE COURT:  Lesser lawyers could not have begun to

19   present this case.  I don't think I could have presented it

20   the way, well, I'm going to leave Hangley out of it.  The

21   way, because Hangley presented the issue of how exhibits

22   should be handled and that was rather esoteric, but you guys

23   just did a superb job and I commend you for that.

24          I don't have need for the boxes.  I learned one

25   thing during the trial.  I'm not going to order routinely, at

1   least, two copies of all exhibits.  I think the way you

2   presented the case didn't require that, at all.  And I

3   apologize to the people who spent as much time as I know was

4   spent in putting together all of these exhibits and these

5   filings.  You don't have to get them out of here today or

6   Monday, which is a legal holiday, but sooner is better than

7   later.  We have the exhibits books that you gave us for each

8   witness.  I don't think we have need for that, so we will

9   return them.  I don't think -- okay, we will return them.

10          As a matter of fact, are both sets of exhibits

11   there, Comcast and Sprint's?

12          MR. FINKELSON:  Yes, your Honor.

13          MR. HANGLEY:  Yes.

14          THE COURT:  All right, well, we'll put the exhibit

15   books over there and Comcast will take its and Sprint will

16   take its.   Now, is there anything else we need do at this

17   time?

18          MR. HANGLEY:  On a personal note, your Honor, first

19   of all, thank you on behalf, I'm sure, of all of us, for the

20   kind remarks.  Second, I know that both arguing counsel have

21   already thanked the jury for their hard work.  I think that

22   has some more genuineness to it when it comes after the

23   verdict.  There may be things that are raised again as issues

24   in other forums or this forum, but one thing I think we're

25   all clear on, this was a jury that deserves to be thanked for

20

1   working as hard as they did and coming the distances that

2   they did.  And as somebody who plows these fields regularly,

3   I was really totally impressed with the way that they

4   conducted themselves.  And I ask you to tell them that on

5   behalf, I think, of all of us.

6          THE COURT:  Well, I will and I'm certainly going to

7   invite them, after I spend a few minutes with them, to chat

8   with you, but that's pretty much their call.  I find that

9   some do, many don't, but I'll leave that to them.

10         Mr. Goettle, is there anything you wish to add?

11         MR. GOETTLE:  I know that the parties have put a

12  tremendous burden on the Court and everybody here involved,

13  so we do very much appreciate all the hard work that you have

14  put in, in this case.  We really do appreciate it.

15         THE COURT:  Oh, you mean the two or three months

16  that we've spent on this case?

17         MR. GOETTLE:  Yes, the just two or three months,

18  yes.

19         MR. RIOPELLE:  Mr. Peterson told me he's going to

20  try to become a patent lawyer in his new firm.

21         THE COURT:  I missed that.

22         MR. HANGLEY:  Because it's long-term employment,

23  right?

24         THE COURT:  Oh, my, well, it really was -- when it's

25  over you can reflect on it and it was a real learning

1   experience.  I don't want to let the word be out that I try

2   patent cases, because I'm not looking forward to another one

3   like this anytime soon.  But it was quite challenging and

4   well-presented.  Mr. Finkelson, anything you wish to --

5           MR. FINKELSON:  I would just echo Mr. Goettle's

6   comments.  We appreciate all of the Court's courtesies and

7   all of the Court's work that you put into this, to you and

8   your entire team.  It's really, it's been a pleasure for us.

9           THE COURT:  My entire team, you're looking at it.

10          MR. RIOPELLE:  Well, Mr. Cosgrove --

11          MR. FINKELSON:  You keep saying team.  But when the

12   binders came out, I saw a few other people back there, too.

13          THE COURT:  No, they're spectators and they're still

14   in the courtroom.  They're going to come with me into jury

15   room.

16          MR. FINKELSON:  But we do extend our thanks to you.

17   We do.

18          THE COURT:  Thank you.  Mr. Riopelle?

19          MR. RIOPELLE:  Yes, your Honor, I would like to

20   extend my personal thanks to you for the accommodation you

21   gave to me and my family during this case and it was very

22   much appreciated.

23          THE COURT:  Well, I don't want to minimize that, but

24   that was easiest decision I had to make.

25          MR. RIOPELLE:  I appreciate it, thank you.

1          THE COURT:  Well, our sincere condolences.  I can't

2   imagine how, with all the work you had to do, how a family

3   tragedy such as you experienced, didn't impact your thought

4   process and your drive and it didn't show at all.  And again,

5   our condolences on the loss of your mother-in-law.  And Ms.

6   Simpson, who wrote that great letter.

7          MS. SIMPSON:  No further comments.

8          THE COURT:  But that was the letter that resolved a

9   number of problems, so, it really worked and I thank you for

10  that.  Okay, I'm going off the bench.

11         THE DEPUTY CLERK:  All rise.

12         (Court adjourned 4:18 o'clock p.m.)

13                              * * *

CERTIFICATION


        I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.


S:/Geraldine C. Laws, CET          Date 2/21/17
Laws Transcription Service